# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERT NIELSEN,<br><br>　　　　　　Plaintiff,<br><br>and<br><br>MEDICARE, WISCONSIN PIPE TRADES HEALTH FUND, UNITED HEALTH CARE CONTINENTAL, and WEA TRUST,<br><br>　　　　　　Involuntary Plaintiffs,<br><br>v.<br><br>SMITH & NEPHEW INC., PLUS ORTHOPAEDICS LLC, and JOHN DOE CORPORATIONS 1–50,<br><br>　　　　　　Defendants. | Case No. 17-CV-1315-JPS<br><br><br><br><br><br><br><br>**ORDER** |

1.  **INTRODUCTION**

Plaintiff Robert Nielsen ("Nielsen") brings this action under the Court's diversity jurisdiction to recover for injuries sustained as a result of a failed hip replacement implant. All of his claims are premised on Wisconsin statutory or common law. (Docket #36). Before the Court are three dispositive motions. (Docket #76, #83, and #101). The motions are fully briefed and, for the reasons stated below, one will be granted and two denied, and this action will proceed to trial in November.[1]

---

[1]Plaintiffs originally came in three groups, Guy and Starlynn Daley, Dana and Sharon Heal, and Robert Nielsen. *See* (Docket #36). All of the claims of the

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

## 3. BACKGROUND

In 2007, Nielsen was surgically implanted with the M-COR Modular Hip System (the "M-COR") at a hospital in Kenosha, Wisconsin. After approximately ten years of ordinary use, the neck of the implant fractured, causing him injury. The M-COR was manufactured by Portland Orthopaedics, Inc. ("Portland"), an Australian firm that went bankrupt before Nielsen's implant failed and which has exhausted its liability insurance. To recover for his injuries, Nielsen has sued Plus Orthopaedics

---

Daleys and the Heals have been settled and they have been dismissed by stipulation. (Docket #113, #130, #131, and #141). For that reason, the pending motions addressed to those plaintiffs will be denied as moot. (Docket #90 and #94). Nielsen has settled his claims against Defendants Maxx Health, Inc., Maxx Orthopedics, Inc., and Mipro US, Inc. (Docket #105). Additionally, he declined to respond to a motion for summary judgment by Defendant Smith & Nephew, Inc., which must be granted on that basis. (Docket #97 and #132); Civ. L. R. 7(d), 56(b)(2), 4. Thus, the only remaining defendant is Plus Orthopaedics LLC.

LLC ("Plus"), a company which distributed the M-COR in the United States from March 2006 to July 2007.

**4.     ANALYSIS**

Nielsen asserts numerous claims, including negligence, breach of warranty, and strict liability under Wisconsin's Product Liability Act, Wis. Stat. § 895.047. *See* (Docket #36). He has submitted two motions for partial summary judgment. The first seeks a ruling as a matter of law that a judgment in his favor in this case cannot be enforced against Portland in light of its bankruptcy and the exhaustion of its insurance policies. (Docket #76). In the second motion, Nielsen asks the Court to find that the M-COR device was defective as a matter of law based on Defendants' purported failure to produce expert testimony defending the efficacy and safety of the device and the warnings provided therewith. (Docket #83). Plus filed its own motion for partial summary judgment, arguing that all of Nielsen's claims, save the strict liability claim, must be dismissed because no expert has established the requisite standard of care. (Docket #101). Each motion will be addressed in turn below.

**4.1     Plus' Motion – Dismissal of all but Nielsen's Strict Liability Claim**

Nielsen asserts eleven causes of action: 1) negligence; 2) strict liability of manufacturers pursuant to Wis. Stat. § 895.047(1)(a)–(e); 3) strict liability of sellers or distributors pursuant to Wis. Stat. § 895.047(1)(a)–(e); 4) breach of express warranty pursuant to Wis. Stat. § 402.313; 5) breach of implied warranty of merchantability pursuant to Wis. Stat. § 402.314; 6) breach of implied warranty of fitness pursuant to Wis. Stat. § 402.315; 7) negligent misrepresentation; 8) fraud; 9) fraudulent misrepresentation pursuant to Wis. Stat. § 100-18; 10) unfair trade practices pursuant to Wis.

Stat. § 100-20; and 11) a product safety act violation pursuant to Wis. Stat. § 100-42. (Docket #36 at 23–31).[2] Plus' motion seeks dismissal of all but the third claim. (Docket #102 at 6–7). In response to the motion, Nielsen concedes that all but two claims should be dismissed: the first and the third. (Docket #114 at 2). Thus, the only claim remaining at issue in Plus' motion is the first claim, which asserts Plus' negligence. *See* (Docket #133 at 2).[3]

A claim of negligence requires proof of defendant's "failure to exercise ordinary care under the circumstances[.]" *Dakter v. Cavallino*, 866 N.W.2d 656, 663 (Wis. 2015). This is "an objective standard; it is the care that would be exercised by a reasonable actor *under the circumstances*." *Id.* at 664 (emphasis in original). Here, Nielsen contends that Plus was negligent "by failing to adequately warn patients or to stop distribution" of the M-COR. (Docket #114 at 3). Thus, he must prove that a reasonable distributor of medical devices in Plus' position would have done otherwise. This determination of whether Plus exercised ordinary care is beyond the common experience of jurors, and thus requires expert testimony to be established at trial. *Grace v. Grace*, 536 N.W.2d 109, 111 (Wis. Ct. App. 1995) ("Expert testimony is required when the issue under consideration involves 'special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of [hu]mankind.'") (quoting *Kujawski v. Arbor View Health Care Ctr.*, 407 N.W.2d 249, 252 (Wis. 1987)).

---

[2] Nielsen also appears to assert claims for successor liability and *res ipsa loquitor*, (Docket #36 at 31–32), but these are theories of liability, not independent causes of action.

[3] Nielsen's response includes a discussion of why Plus is not entitled to summary judgment on the strict liability claim, but Plus never sought such relief. In future, Nielsen should more carefully review his opponents' filings before responding to them.

Plus argues that Nielsen has proffered no expert testimony regarding the standard of care it was bound by, namely as an entity which did not design, manufacture, test, or market the M-COR. (Docket #102 at 13–14). Plus also had no role in labeling, packaging, or placing warnings on the device. *Id.* at 14. Rather, Plus was simply a middle man, taking deliveries of the final, sealed product and sending it on to customers. *Id.* Plus maintains that a jury would need to determine what steps a distributor like itself must take to discover potential defects and warn consumers about them. *Id.* This is beyond the experience of the ordinary juror. *Id.*

Nielsen responds to this argument in three sentences:

> Plaintiff's [sic] timely submitted an expert report by Mari Truman. She specifically opines that Plus acted negligently in this case by failing to adequately warn patients or to stop distribution of the M-Cor hip. (ECF 86, Truman Dec., Ex. 1 at 45.) Accordingly, there is an issue of fact that precludes Summary Judgment dismissal of Plaintiff's negligence claim.

(Docket #114 at 3). Such minimal effort, devoid of any citation to law or meaningful discussion of evidence, is an insult to the Court and could nearly be considered a waiver of the point. *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 335 n.8 (7th Cir. 2010) (underdeveloped arguments are waived).

In any event, it fails to stave off dismissal of the negligence claim. The single cited page of Truman's report suggests, at best, that the M-COR was not properly designed to handle the loads it would bear over a lifetime of use. (Docket #86-1 at 46). Nowhere on that page does Truman "specifically opine[] that Plus acted negligently in this case by failing to adequately warn patients or to stop distribution of the M-Cor hip." (Docket #114 at 3). More importantly, Truman offers no opinion about what a

reasonable distributor like Plus should have done with this information. Plus had no say in the design of the M-COR and did not package it. Should Plus have done its own testing, re-design, or re-packaging of the device? Should it have warned consumers or medical providers of the issues with the M-COR? If so, what should it have told them? The cited page does not answer these questions, and to be sure, the Court will not hunt through the report to find them on Nielsen's behalf. Nielsen has not, therefore, adduced the evidence necessary to go to a jury on a claim that Plus was negligent. Plus' motion for summary judgment must be granted.

### 4.2 Nielsen's Motion – Device Defectiveness

The only remaining claim, then, is Nielsen's strict liability claim against Plus. To prove this claim, Nielsen must establish the following: 1) that the M-COR device was defective in manufacture, design, or because of inadequate instructions or warnings; 2) that the defect made the device unreasonably dangerous; 3) that the defect existed at the time the device left Plus' control; 4) that the device reached Nielsen without a substantial change in its condition; 5) that the defect was the cause of Nielsen's damages; and 6) that Nielsen cannot enforce a judgment against Portland or its insurer. *See* Wis. Stat. § 895.047(1)(a)–(e), (2)(a)(3). Nielsen seeks judgment on the first and sixth elements. The Court will first address Nielsen's motion as to the first element—device defectiveness.

In his opening brief, Nielsen says that Truman offers two opinions relevant to this issue. Truman opines that the M-COR was both defectively designed and was not provided to users with adequate instructions or warnings. In response, Plus notes that it has marshalled ample contrary expert authority that the M-COR's design was appropriate. In reply, Nielsen acknowledges that a dispute of fact exists as to defective design. He

reiterates, however, that there can be no genuine dispute as to whether the device included appropriate instructions or warnings.

The Court disagrees. In filing his motion, Nielsen assumed two burdens, first to establish an absence of disputed material facts, and second entitlement to judgment as a matter of law. He has failed at both. The parties' experts dispute what warnings or instructions were necessary for the M-COR device. *See* (Docket #125 at 7–9); (Docket #134 at 2–8). While the evidence may favor Nielsen's view at this stage, it is not enough to secure summary judgment. The Court must leave it to the trier of fact to determine which of the experts are correct. This conclusion is buttressed by the fact that Nielsen inexplicably declined to dispute any of Plus' statements of additional material facts. *See* (Docket #120). The Court must therefore take each of those as true for purposes of addressing this motion. Civ. L. R. 56(b)(3)(B), (b)(4). Nielsen instead filed a limited motion to strike a portion of an opinion posited by one of Plus' experts. (Docket #135). That motion will be denied without prejudice. Nielsen remains free to offer a motion in limine on the issue, if appropriate, and may of course argue any infirmities with the expert's opinion directly to the jury at trial.[4]

As for the legal aspect of Nielsen's motion, in all of his specific arguments about inadequate instructions and warnings, he cites only to Wisconsin's product liability statute, and not to a single case interpreting it. *See* (Docket #134 at 2–8). Nielsen makes no attempt to analogize to any prior application of the statute. *Id.* As with his response to Plus' motion, Nielsen

---

[4]In responding to Nielsen's motion, Plus suggests that he has failed to present any expert opinion to support causation or damages. (Docket #125 at 10–12). This was not raised as a basis for dismissal of the strict liability claim in Plus' own motion, and so it too must be left for pre-trial motion practice or trial argument.

seems content to leave it to the Court to find the law that supports his arguments. It will not do so. The issue of the M-COR's alleged defectiveness must be resolved by the jury.

### 4.3 Nielsen's Motion - Judgment Enforcement

As discussed above, Nielsen also seeks judgment on the final element of his strict liability claim—that he cannot enforce a judgment against Portland or its insurer. Under the Wisconsin Product Liability Act, a manufacturer is strictly liable for injuries caused by its defective products. Wis. Stat. § 895.047. But if a claimant is unable to enforce a judgment against either the manufacturer or its insurer, the seller or distributor of the product, in this case Plus, becomes strictly liable. *Id.* § 895.047(2)(a)(3).[5]

---

[5] Nielsen argues that because the statute includes the word "or," he is only required to prove that one or the other of the manufacturer or the insurer is judgment-proof. (Docket #77 at 3–4). But his interpretation does not comport with the plain, unambiguous language of the statute. The relevant statutory text states:

> **(2) Liability of seller or distributor.** (a) A seller or distributor of a product is not liable based on a claim of strict liability to a claimant unless the manufacturer would be liable under sub. (1) and any of the following applies:
> …
> 3. A court determines that the claimant would be unable to enforce a judgment against the manufacturer or its insurer.

Wis. Stat. Ann. § 895.047(2)(a)(3). The statutory text clearly imposes liability on a seller or distributor only if the plaintiff shows he cannot collect from *either* the manufacturer *or* that party's insurer. *Moya v. Aurora Healthcare, Inc.*, 894 N.W.2d 405, 410 (Wis. 2017) ("If the text of the statute is plain and unambiguous, our inquiry stops there."). If he can collect from one of those entities—the manufacturer or the insurer—liability under this statute section is not triggered. The statute is crafted to provide an additional avenue for recovery to a plaintiff who would otherwise have none. Reading the statute the way Nielsen proposes would allow a plaintiff to recover from both a manufacturer and a distributor, and this is clearly not the statute's purpose.

Nielsen's motion must be denied because he has not proven by admissible evidence that he cannot recover for his injury from Portland's insurer. Nielsen relies on the following evidence: portions of Portland's insurance policy, (Docket #78-6 and #78-7), several letters and emails addressed to Nielsen's counsel from Portland's counsel or Portland's insurance company, (Docket #78-8 and #78-11—16), and two emails Nielsen's counsel wrote to Portland's insurance company or its attorney, (Docket #78-9 and #78-10). Plus argues all of this evidence is either unauthenticated or inadmissible hearsay, and the Court agrees.

First, the portions of the insurance policy Nielsen produced have not been authenticated; they are supported only by Nielsen's counsel's declaration, and he does not purport to have firsthand knowledge about the policy's authenticity. They are therefore inadmissible. Fed. R. Evid. 901(a), (b). Next, the statements by Portland or its counsel relating to coverage that appear in emails to or from Nielsen's counsel, or in a mediation letter, are hearsay. Fed. R. Evid. 801 and 802. Nielsen responds that these emails and letters are authentic, and he knows this to be true because his counsel sent or received them, and declared as much. (Docket #137 at 4). But that is beside the point. Authenticity is not the issue with these exhibits; the issue is that the statements contained in the emails and letters, which purport to demonstrate that Portland's insurance policy is spent, are out of court statements offered for the truth of the matter asserted. Nielsen has not identified an applicable hearsay exception that would allow these exhibits to be admitted. Fed. R. Evid. 803. Nielsen could have, for instance, provided affidavit testimony from Portland's insurer about the exhaustion of policy limits, but he has not done so. Without evidence of that kind, he has not proven that the insurance policy is no

longer a viable option for recovery. It might be true, as Nielson contends, that Portland's insurance expired and its limits were paid to satisfy claims that arose long before Nielsen's injury. He is left to prove this at trial.

Because summary judgment must be denied on this basis, the Court need not decide Plus' other bases for denial of summary judgment on this element; the Court will leave those issues, explained briefly here, for trial briefing. First is the issue of whether Nielsen can prove that he cannot enforce a judgment against Portland. Nielsen contends that Portland filed bankruptcy, liquidated all assets, and filed a deed of company arrangement that released it from future claims, including Nielsen's.

Plus does not contest that Portland is judgment-proof; it simply argues that Nielsen has not yet sufficiently proven it. Specifically, Plus responds by arguing that issues of fact preclude summary judgment on this issue because Nielsen did not provide evidence that the deed of company arrangement has been satisfied, all assets of the company have been exhausted, and that he is unable to assert a claim against and collect from the trust. Plus also argues that Nielsen has not submitted evidence that Portland was not able to continue in existence after the deed of company arrangement was issued, thereby providing a potential source of relief in the entity which acquired Portland (or its liabilities).

Nielsen submitted additional evidence with his reply that could resolve this issue, had it been timely submitted in an admissible declaration. (Docket #138-1). That evidence is a letter from Portland's deed administrator indicating that the funds raised by the company to pay creditors were exhausted by 2011 and that no further claims can or will be paid. *Id.* The letter was not signed under penalty of perjury and is therefore not admissible at this stage. *DeBruyne v. Equitable Life Assur. Soc'y,* 920 F.2d

457, 471 (7th Cir.1990) (an unsworn declaration may be used, in lieu of a sworn affidavit, to support or respond to a motion for summary judgment only if it is dated and signed by the declarant "under penalty of perjury" and verified as "true and correct"). Nielsen will have his opportunity to prove the insolvency of Portland at trial.

The other issue Plus raises in its opposition is whether the availability of a solvent successor to a liable manufacturer precludes a distributor's liability under Wis. Stat. § 895.047(2)(a)(3). The parties argue whether Mipro US, Inc. ("Mipro") is liable as a successor to Portland, but neither party has addressed the threshold question of whether a plaintiff's ability to recover from a manufacturer's successor eliminates the plaintiff's potential for recovery from the distributor under Wis. Stat. § 895.047(2)(a)(3). Plus argues that if Nielsen can recover from Mipro as a successor to Portland, then his judgment can technically be "enforced" against Portland for purposes of the statute. (Docket #127 at 4). But Plus cites no caselaw for this proposition, and Nielsen provides no response. The Court will not decide the issue at this stage based on the underdeveloped legal analysis before it. This threshold question must, like many others, be addressed in pretrial motions.

4. **CONCLUSION**

It is readily apparent to the Court that neither Nielsen nor Plus put forth an appropriate level of effort into their dispositive motion practice. The Court trusts that their trial preparation, including completion of the final pre-trial report, will reflect a significantly increased level of energy and cooperation amongst them. Nevertheless, for the reasons stated above, the Court will grant Plus' motion for summary judgment as to all claims save for the strict liability claim. The Court will deny Nielsen's motions for

summary judgment with respect to the first and sixth elements of the strict liability claim. The Court will also grant the parties' various motions to seal. (Docket #74, #89, #93, and #119).

Accordingly,

**IT IS ORDERED** that the parties' motions to seal (Docket #74, #89, #93, and #119) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Robert Nielsen's motion for partial summary judgment regarding judgment enforcement (Docket #76) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff Robert Nielsen's motion for partial summary judgment regarding device defectiveness (Docket #83) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the dispositive motions filed by or directed to dismissed parties (Docket #90, #94, and #106) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Smith & Nephew Inc.'s motion for summary judgment (Docket #97) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Smith & Nephew Inc. be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendant Plus Orthopaedics LLC's motion for partial summary judgment (Docket #101) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that each of Plaintiff Robert Nielsen's claims for relief (Docket #36 at 23–31) be and the same are hereby **DISMISSED** except for the claim of "Defendants' Strict Liability as Seller

or Distributor" pursuant to Wis. Stat. § 895.047(1)(a)–(e) & (2) (Docket #36 at 26–27); and

**IT IS FURTHER ORDERED** that Plaintiff Robert Nielsen's motion to strike (Docket #135) be and the same is hereby **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Court